1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LARRY CRENSHAW,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. C09-5485KLS

ORDER AFFIRMING THE
COMISSIONER'S DECISION TO DENY
BENEFITS

        Plaintiff, Larry Crenshaw, has brought this matter for judicial review of the denial of his

application for disability insurance benefits.  The parties have consented to have this matter

heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil

Procedure 73 and Local Rule MJR 13.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds and ORDERS:

FACTUAL AND PROCEDURAL HISTORY

        Plaintiff currently is 57 years old.[1] Tr. 53.  He has a high school education and past

relevant work as a short order cook, fast food cook, and security guard. Tr. 70, 75, 82; (Dkt. #15-

2).  On January 30, 2004, plaintiff filed an application for disability insurance benefits, alleging

disability as of May 25, 2002, due to diabetes, arthritis, joint and back pain, hepatitis, and high

blood pressure. Tr. 21, 65, 69.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public
Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the
United States.

ORDER - 1

Plaintiff's application was granted initially on September 20, 2004, with an onset date of disability of January 1, 2004. Tr. 55, 61.  Upon reconsideration, his onset date of disability was amended to October 8, 2003. Tr. 54.  Plaintiff then requested a hearing, arguing he was disabled as of his alleged onset date of May 25, 2002. Tr. 21, 1034-37.  A hearing was held before an administrative law judge ("ALJ") on March 6, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 1032-54.

On April 23, 2007, the ALJ issued a decision, in which he found in relevant part:

(1)   at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)   at step two, since his alleged onset date of disability, plaintiff had a "severe" impairment consisting of diabetes with diabetic neuropathy, but as of October 8, 2003, plaintiff had additional severe impairments consisting of a major depressive disorder and an anxiety disorder;

(3)   at step three, prior to October 8, 2003, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4)   after step three but before step four, since his alleged onset date of disability, plaintiff had the residual functional capacity to perform sedentary work with certain additional non-exertional limitations;[3]

(5)   at step four, plaintiff was incapable of performing his past relevant work; and

(6)   at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy prior to June 1, 2003, and thus was not disabled before that date, but beginning on June 1, 2003, there was not a significant number of jobs in the national economy he could perform, and therefore he was disabled as of that date.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

ORDER - 2

Tr. 21-28; (Dkt. #15-2).  Plaintiff's request for review was denied by the Appeals Council on

July 21, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. §

404.981.

On August 6, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's

decision. (Dkt. #1).  The administrative record was filed with the Court on October 19, 2009.

(Dkt. #10).  Plaintiff argues the ALJ's decision should be reversed and remanded to the

Commissioner for an award of benefits or, in the alternative, for further administrative

proceedings for the following reasons:

> (a)   the ALJ erred in finding plaintiff's major depressive disorder and anxiety
> disorder were not severe prior to October 8, 2003;
>
> (b)   the ALJ erred in assessing plaintiff's credibility;
>
> (c)   the ALJ erred in failing to consider the lay witness evidence in the record;
>
> (d)   the ALJ erred in assessing plaintiff's residual functional capacity for the
> period between May 25, 2002, and June 1, 2003;
>
> (e)   the ALJ erred in failing to include all relevant limitations in the hypothetical
> question he posed to the vocational expert; and
>
> (f)   the ALJ erred in failing to use a mental health expert to assess the likely
> onset date of plaintiff's mental health conditions.

For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to

be not disabled, and therefore finds the ALJ's decision should be affirmed.  While plaintiff has

requested oral argument here, the undersigned finds such argument to be unnecessary.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if

the Commissioner applied the proper legal standard and there is substantial evidence in the

record as a whole to support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir.

ORDER - 3

1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v.</u>

<u>Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v.</u>

<u>Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one

rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>,

749 F.2d 577, 579 (9th Cir. 1984).

I.      <u>The ALJ's Step Two Analysis</u>

        At step two of the sequential disability evaluation process, the ALJ must determine if an

impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not

"significantly limit" a claimant's mental or physical abilities to do basic work activities. 20

C.F.R. § 404.1520(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.

Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §

404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

        An impairment is not severe only if the evidence establishes a slight abnormality that has

"no more than a minimal effect on an individual[']s ability to work."  <u>See</u> SSR 85-28, 1985 WL

56856 *3; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v. Bowen</u>, 841 F.2d

303, 306 (9th Cir.1988).  Plaintiff has the burden of proving his "impairments or their symptoms

affect [his] ability to perform basic work activities." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1159-

60 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry

described above, however, is a *de minimis* screening device used to dispose of groundless claims.

<u>Smolen</u>, 80 F.3d at 1290.

        As noted above, the ALJ found plaintiff's major depressive disorder and anxiety disorder

ORDER - 4

to be severe impairments as of October 8, 2003, but not prior thereto. Tr. 23.  Specifically, the

ALJ found as follows:

> . . . the claimant first sought treatment for major depressive disorder and
> anxiety disorder in October of 2003. 7F/02.  His reported symptoms
> include[d] depressed mood, anger, agitation, irritability, fear, flashbacks,
> intrusive recollections, sleep disturbances, fatigue, poor concentration, social
> withdrawal, paranoia, and some suicidal ideation. 7E/190, 202, 408-409; 8F/1.
> He also experiences auditory and visual hallucinations. *See, e.g.*, 7F/143, 148,
> 151, 161.  He was found to have extremely poor concentration during
> psychological testing. 7F/144.  The claimant was given a global assessment of
> functioning ("GAF") score of 35 in October of 2003, representing some
> impairment in reality testing or communication, or major impairment in
> several areas such as work or school, family relations, judgment, thinking, or
> mood. 7F/201.

> Consultative psychiatrist Richard Price, M.D., examined the claimant in July
> of 2004. 8F/1-4.  Dr. Price observed that the claimant had very slow cognitive
> function. 8F/4.  Dr. Price diagnosed the claimant with posttraumatic stress
> disorder, alcohol and cocaine dependence in early remission, intermittent
> explosive disorder, and recurrent depression, with a GAF score of 40 to 45.[4]

> Finally, I note that the claimant received 100 percent service connected
> disability from the Veteran's Administration due to posttraumatic stress
> disorder. 13E/2-3.  This was effective April 1, 2004.

> The state agency did not find sufficient evidence of mental impairments prior
> to October of 2003, but found the claimant was disabled due to mental
> impairments as of October 8, 2003.  I agree with the state agency that the
> claimant's mental impairments more than minimally impacted his vocational
> functioning as of October 8, 2003.  Accordingly, I find the claimant's
> affective disorder and anxiety disorder were severe impairments as of October
> 8, 2003.  However, the claimant's mental impairments were non-severe prior
> to October 8 2003 because there is literally no suggestion of mental
> impairments in the medical record [at] that time.

Tr. 23-24.

---

4 A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's
judgment of [a claimant's] overall level of functioning.'" <u>Pisciotta v. Astrue</u>, 500 F.3d 1074, 1076 n.1 (10th Cir.
2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or
school functioning,' such as an inability to keep a job." <u>Id.</u> (quoting Diagnostic and Statistical Manual of Mental
Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); <u>see also</u> <u>Cox v. Astrue</u>, 495 F.3d 614, 620 n.5 (8th
Cir. 2007) (GAF score in forties may be associated with serious impairment in occupational functioning)

Plaintiff argues that "[t]he nature of the impairment, the evidence, and common sense suggests that this conclusion is not well founded." (Dkt. #14, p. 7).  But plaintiff points to no objective medical evidence in the record – nor, like the ALJ, does the Court find any – that shows any of his mental impairments, either separately or in combination, caused more than *de minimis* limitations in his ability to perform basic work activities.  While it may be, as plaintiff argues, that his underlying mental conditions existed prior to October 8, 2003, again he has not established any work-related limitations stemming therefrom during that period.  See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability").

Although plaintiff may believe that a finding of non-severity prior to that date defies both logic and common sense, the ALJ's determination here is perfectly consistent with the law in this area and the facts of this case.  That is, at step two of the sequential disability evaluation process, while a claimant's reported symptoms must be taken into account (see 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of the objective medical evidence in the record.  See SSR 85-28, 1985 WL 56856 *4.  As just discussed, such evidence is simply absent from the record.  In addition, it is inappropriate to base a step two finding on the evidence in the record concerning plaintiff's past difficulties with supervisors and co-workers, as that evidence clearly comes from his own testimony and self-reports.

Accordingly, the undersigned finds the ALJ did not err in finding plaintiff did not have a severe major depressive or anxiety disorder prior to October 8, 2003.  Nor, as just discussed, is the record ambiguous or uncertain as to the severity of those impairments during that period, so as to require the ALJ to call a medical expert to testify in that regard.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when

1   there is ambiguous evidence or when record is inadequate to allow for proper evaluation of

2   evidence).  To the contrary, the record unambiguously establishes plaintiff's major depressive

3   disorder and anxiety disorder resulted in no work-related limitations during the time period in

4   question here.

5   II.      The ALJ's Assessment of Plaintiff's Credibility

6           Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker,

7   694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility

8   determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility

9   determination where that determination is based on contradictory or ambiguous evidence. Id. at

10  579.  That some of the reasons for discrediting a claimant's testimony should properly be

11  discounted does not render the ALJ's determination invalid, as long as that determination is

12  supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

13          To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

14  reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

15  The ALJ "must identify what testimony is not credible and what evidence undermines the

16  claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless

17  affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

18  claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a

19  whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir.

20  2003).

21          In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

22  credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

23  symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

24  

25  

26  

ORDER - 7

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. Id.

> In his decision, the ALJ assessed plaintiff's credibility as follows:
>
> The claimant alleges that he is disabled due to diabetes, arthritis, joint pains,
> back pain, hepatitis, and high blood pressure. 1E/2.  He testified at the hearing
> that he was terminated from his last job as a security guard on May 25, 2002
> because he had stomach problems, could not be on his feet due to diabetes,
> and had trouble getting along with his supervisors.
>
> After considering the evidence of record, I find that the claimant's medically
> determinable impairments could reasonably be expected to produce the
> alleged symptoms, but that the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not entirely credible
> prior to June 1, 2003.

Tr. 26.  Plaintiff argues, and the Court agrees, that the ALJ's credibility determination here is

lacking in the requisite specificity.  That is, the ALJ has failed to provide clear and convincing,

let alone legitimate and specific, reasons for discounting plaintiff's credibility.  Defendant argues

that since the ALJ – immediately following the above two paragraphs – discussed the objective

medical evidence in the record, which was not consistent with plaintiff's allegations of disabling

symptoms, and that because some of that evidence contains a comment from two non-examining

physicians regarding minimal treatment received by plaintiff, the ALJ did provide two legitimate

reasons for discounting plaintiff's credibility here.

It is true that a determination that a claimant's complaints are "inconsistent with clinical

observations" can satisfy the clear and convincing requirement.  Regennitter v. Commissioner of

SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  It also is true that an ALJ properly may discount the

credibility of a claimant based on a lack of treatment. See Meanal v. Apfel, 172 F.3d 1111, 1114

(9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure

ORDER - 8

to request serious medical treatment for supposedly excruciating pain); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).  Here, though, the ALJ gave no indication he was actually discounting plaintiff's credibility for these reasons. As such, it is impossible for this Court to determine exactly on what basis the ALJ found plaintiff to lack credibility.  Accordingly, the ALJ erred here.

The Court agrees with defendant, though, that this improper credibility determination was harmless in this case.  An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." <u>Stout v. Commissioner, Social Security Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).  As discussed above, the ALJ did not err in finding plaintiff did not have a severe mental impairment prior to October 8, 2003, as the objective medical evidence in the record failed to reveal the presence of any work-related limitations stemming from those impairments during that time period.  As such, it makes no difference to the ultimate outcome of this matter that the ALJ erred in assessing plaintiff's allegations of significant mental limitations, as such allegations are insufficient by themselves to establish disability.

Plaintiff's subjective complaints also largely are consistent with the ALJ's assessment of his physical residual functional capacity for that same time period.  As noted above, the ALJ found plaintiff was able to perform sedentary work, but with certain additional non-exertional limitations.  Specifically in regard to the latter, the ALJ found he could perform a job involving "**only occasional stooping, kneeling, and climbing ladders or ropes, in an environment without exposure to vibration or hazards such as heights**." Tr. 25 (emphasis in original). Plaintiff counters that he testified at the hearing that he essentially was fired from the last job he

had because of his "ongoing physical problems." (Dkt. 14, p. 10). What the record actually

shows, however, is that plaintiff testified that he stopped working because he could not be on his

feet for a full work period. See Tr. 1040. In addition, while plaintiff testified as well that he had

"a lot of pain with [his] stomach" and that his "diabetes seemed [to] take a toll" (Tr. 1040-41), he

did not testify or give any indication as to exactly what impact those conditions had on his ability

to do the particular work tasks involved in that job.

More importantly, however, plaintiff further testified that he "pretty much . . . was fired

[from that job] due to some hearsay" from – and "problems getting along with" – his co-workers,

and not because of his physical problems. Id. The Court notes as well that the objective medical

evidence in the record fails to indicate plaintiff was experiencing any significant problems with,

or was restricted from performing, work-related activities at the time due to stomach pain or

diabetes-related issues. While again the ALJ did not note this specifically as a basis for rejecting

plaintiff's credibility, it does strongly indicate that his error in failing to do so (and in also failing

to specifically note the conservative treatment plaintiff received) is largely inconsequential to the

ALJ's ultimate disability determination. For all of the above reasons, therefore, the Court finds

the ALJ's errors here do not form a sufficient basis for reversing his overall decision concerning

plaintiff's disability, or lack thereof, during the relevant time period.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a written statement from plaintiff's wife regarding her observations of plaintiff's symptoms and limitations. See Tr. 101-07. Plaintiff argues the ALJ erred by failing to mention, and thus consider, this evidence in his decision. Defendant does not disagree that the ALJ erred in failing to do so, but argues that such error was harmless. The Court too agrees that while the ALJ clearly erred in failing to discuss the above lay witness evidence in his decision, it was inconsequential to his ultimate disability decision. This is because as defendant points out, none of the observations plaintiff's wife makes in her statement relate to the particular period of time at issue here, namely that period between May 25, 2002, and June 1, 2003. In addition, the Court agrees with defendant that for the most part, nothing in that statement is inconsistent with the residual functional capacity with which the ALJ assessed plaintiff.

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's

ORDER - 11

1  inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the

2  ALJ must consider only those limitations and restrictions "attributable to medically determinable

3  impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

4  claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

5  accepted as consistent with the medical or other evidence." Id. at *7.

6       As noted above, the ALJ found that since his alleged onset date of disability plaintiff had

7  the residual functional capacity to perform sedentary work, with the additional limitation that he

8  perform a job involving "**only occasional stooping, kneeling, and climbing ladders or ropes,**

9  **in an environment without exposure to vibration or hazards such as heights.**" Tr. 25

10 (emphasis in original).  Plaintiff contests the ALJ's RFC assessment here, arguing the medical

11 evidence in the record reveals that his diabetes was not under control for significant periods of

12 time after he was fired from his last job, and that he was found to have significant cognitive

13 impairments in mid-July 2004, suggesting his mental health condition had been present for years

14 prior thereto.  This latter argument, however, already has been rejected for the reasons set forth

15 above, and plaintiff has failed to establish that high glucose levels alone constitutes a significant

16 work-related limitation, and, most importantly, that such levels have significantly limited him in

17 his ability to work in this case.

18 V.     The Hypothetical Question the ALJ Posed at Step Five

19      If a claimant cannot perform his or her past relevant work, at step five of the disability

20 evaluation process the ALJ must show there are a significant number of jobs in the national

21 economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20

22 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert or

23 by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180

F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In this case, the ALJ posed a hypothetical question to the vocational expert at the hearing, containing substantially the same limitations as the ALJ included in his assessment of plaintiff's residual functional capacity. See Tr. 1047-48. In response thereto, the vocational expert testified that an individual who had those limitations, and the same age, education and work experience as plaintiff, would be capable of performing other jobs. See Tr. 1048. Based on the vocational expert's testimony, the ALJ found that prior to June 1, 2003, plaintiff could perform other work existing in significant numbers in the national economy. See Tr. 27. Plaintiff argues the ALJ erred here by failing to include any mental functional limitations in the hypothetical question he posed for that time period. But, once more for the reasons discussed above, the ALJ did not err in failing to do so, given that the ALJ also did not err in finding no severe mental impairment for that period or in including any in his assessment of plaintiff's RFC.

VI.    Use of a Mental Health Expert to Determine Onset Date of Disability

Plaintiff argues the ALJ erred in failing to use a mental health expert to assess the likely onset date of his disabling mental health conditions. As noted by plaintiff, SSR 83-20 sets forth

ORDER - 13

1   the Commissioner's policy when establishing a claimant's onset date of disability.  That ruling

2   comes into play, however, only after the claimant has met the "ultimate burden" of proving

3   disability prior to the expiration of his or her insured status.  Armstrong v. Commissioner of the

4   Social Security Administration, 160 F.3d 587, 590 (9th Cir. 1998).  In other words, it is only in

5   those cases where the claimant has established that he or she is in fact disabled and the "record is

6   ambiguous as to the onset date of disability," that SSR 83-20 requires the ALJ to "assist the

7   claimant in creating a complete record," which "forms a basis for" establishing a disability onset

8   date. Id.  Here, though, not only has plaintiff failed to establish that he was in fact disabled

9

10  during the period between May 25, 2002, and June 1, 2003, but, as pointed out by defendant, the

11  record is unambiguous regarding the date when plaintiff did become disabled.  Accordingly, no

12  error was committed by the ALJ in failing to use a medical expert here.

13                                    CONCLUSION

14

15          Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff

16  to be not disabled prior to June 1, 2003.  Accordingly, the ALJ's decision hereby is AFFIRMED.

17          DATED this 30th day of July, 2010.

18

19

20

21                                    Karen L. Strombom
                                      United States Magistrate Judge
22

23

24

25

26

ORDER - 14